# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION
# Case No. 5:20-cv-00087-TBR

JENNIE VALDIVIA                                                                                           PLAINTIFF

v.

PADUCAH CENTER FOR HEALTH AND
REHABILITATION, LLC d/b/a
STONECREEK HEALTH AND REHABILITATION                                             DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendant Paducah Center for Health and Rehabilitation, LLC d/b/a Stonecreek Health and Rehabilitation's ("Stonecreek") Motion to Dismiss. [DN 5]. Plaintiff, Jennie Valdivia ("Valdivia"), has responded. [DN 6]. Stonecreek has replied. [DN 7]. As such, this matter is ripe for adjudication. For the reasons that follow, **IT IS HEREBY ORDERED** that Stonecreek's Motion to Dismiss [DN 5] is **GRANTED**.

### I. Background

According to the Complaint, Valdivia began her employment with Stonecreek in 2018 as a Certified Nursing Assistant ("CNA"). [DN 1 at 2]. In order to help stop the spread on COVID-19, Stonecreek established a check-in desk where employees had their temperature checked. [*Id.* at 3]. On March 23, 2020 Valdivia reported to work and took her temperature. [*Id.*] Valdivia felt ill and had a temperature of 99.8. [*Id.*] After reporting her temperature, she was advised to wait thirty minutes and re-check her temperature. [*Id.*] When Valdivia re-checked her temperature, it had increased to 100.1. [*Id.*] The Assistant Director of Nursing told Valdivia to go home. [*Id.*]

Valdivia received a call from the Director of Nursing "who said the absence would be unexcused until she provided a doctor's excuse." [*Id.* at 4]. Valdivia received eight calls from the district manager asking her to return to Stonecreek for further assessment, but Valdivia missed

those calls. [*Id.*] The next day, Valdivia went to the doctor and was told she did not have COVID-19 but she did have a stomach virus. [*Id.*] Valdivia then texted a picture of her doctor's excuse to her supervisor. [*Id.*] The next day, March 25, 2020, Valdivia's employment was terminated for being "aggressive with patients." [*Id.*] Valdivia claims she was terminated "for missing work due to her illness and desire to be checked for COVID-19 and any other infectious disease she might have had." [*Id.*]

## II. Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss under Rule 12(b)(6), a party must "plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.,* 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007)). When considering a Rule 12(b)(6) motion to dismiss, the Court must presume all of the factual allegations in the complaint are true and draw all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). "The court need not, however, accept unwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). Should the well-pleaded facts support no "more than the mere possibility of misconduct," then dismissal is warranted. *Iqbal*, 556 U.S at 679. The Court may grant a motion to dismiss "only if, after drawing all reasonable inferences from the allegations in the complaint in favor of the

plaintiff, the complaint still fails to allege a plausible theory of relief." *Garceau v. City of Flint*, 572 F. App'x. 369, 371 (6th Cir. 2014) (citing *Iqbal*, 556 U.S. at 677–79).

## III. Discussion

### A. Emergency Paid Sick Leave Act

#### 1. Healthcare Provide Exclusion

Count One of Valdivia's Complaint alleges Stonecreek violated the Emergency Paid Sick Leave Act ("EPSLA") by failing to provide her with paid sick leave. Stonecreek argues it has elected to exclude health care providers from EPSLA coverage. Valdivia argues Stonecreek did not properly elect the exclusion or Stonecreek is estopped from invoking the exclusion.

The EPSLA was enacted as a response to the COVID-19 pandemic. Section 5102 of the EPSLA provides in relevant part:

> (a) IN GENERAL.—An employer shall provide to each employee employed by the employer paid sick time to the extent that the employee is unable to work (or telework) due to a need for leave because:
> …
>
> (3) The employee is experiencing symptoms of COVID–19 and seeking a medical diagnosis.
> …
>
> Except that an employer of an employee who is a health care provider or an emergency responder may elect to exclude such employee from the application of this subsection.

Families First Coronavirus Response Act, PL 116-127, §5102(a), 134 Stat. 178 (2020). The regulations provide the following definition for "health care provider":

> (i) Basic definition. For the purposes of Employees who may be exempted from Paid Sick Leave or Expanded Family and Medical Leave by their Employer under the FFCRA, a health care provider is
>
> > (A) Any Employee who is a health care provider under 29 CFR 825.102 and 825.125, or;

3

> (B) Any other Employee who is capable of providing health care services, meaning he or she is employed to provide diagnostic services, preventive services, treatment services, or other services that are integrated with and necessary to the provision of patient care and, if not provided, would adversely impact patient care.

(ii) Types of Employees. Employees described in paragraph (c)(1)(i)(B) include only:

> (A) Nurses, nurse assistants, medical technicians, and any other persons who directly provide services described in (c)(1)(i)(B);

29 CFR § 826.30. Neither party denies Valdivia is a health care provider under the relevant definition.

The EPSLA also requires employers to give their employees notice of the requirements of the Act. Section 5103 provides:

> (a) IN GENERAL.—Each employer shall post and keep posted, in conspicuous places on the premises of the employer where notices to employees are customarily posted, a notice, to be prepared or approved by the Secretary of Labor, of the requirements described in this Act.
>
> (b) MODEL NOTICE.—Not later than 7 days after the date of enactment of this Act, the Secretary of Labor shall make publicly available a model of a notice that meets the requirements of subsection (a).

The regulation concerning employer notice provides in relevant part:

> (a) Every Employer covered by FFCRA's paid leave provisions is required to post and keep posted on its premises, in conspicuous places a notice explaining the FFCRA's paid leave provisions and providing information concerning the procedures for filing complaints of violations of the FFCRA with the Wage and Hour Division.
>
> …
>
> (c) To meet the requirements of paragraph (a) of this section, Employers may duplicate the text of the Department's model notice (WHD 1422 REV 03/20) or may use another format so long as the information provided includes, at a minimum, all of the information contained in that notice. Prototypes are available at www.dol.gov/whd. Employers furnishing notices to sensory-impaired individuals must also comply with all applicable requirements under Federal or State law.

29 CFR § 826.80. The Model Notice the regulation refers to does not reference the healthcare provider exclusion.

Both the statute and the regulations are silent on how an employer must elect to exclude healthcare providers from coverage. Valdivia relies on the regulations' guidance on electing a separate small business exemption. 29 CFR § 826.40(b)(2) provides:

> To elect this small business exemption, the Employer must document that a determination has been made pursuant to the criteria set forth by the Department in § 826.40(b)(1). The Employer should not send such documentation to the Department, but rather retain the records in its files.

However, this small business exemption specifically applies to the "requirement to provide leave under the EPSLA Section 5102(a)(5) and the EFMLEA for Employers with fewer than 50 Employees." 29 CFR § 826.40(b). Valdivia did not qualify for leave under 5102(a)(5).

"The preeminent canon of statutory interpretation requires us to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.'" *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (quoting *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–254 (1992)). "Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *Id.* (citing *Lamie v. United Stated Trustee,* 540 U.S. 526, 534 (2004)). Due to the recent enactment of the EPSLA there is no caselaw interpreting this specific issue.

Here, the statute requires employers to post a notice about the requirements of this Act. The Model Notice the Department of Labor ("DOL") made available does not reference the healthcare provider exclusion. Therefore, under the plain language of the notice statute, an employer is not required to notify employees of the exclusion. Further, the DOL chose to explicitly state a process for employers electing to use the small business exemption while remaining silent on employers electing to exclude healthcare providers. Valdivia does not point to any ambiguity

5

in the statute or regulations but asks this Court to find employers are required to "document some affirmative action giving notice to employees that they are ineligible for the Paid Sick Leave provisions". [DN 6 at 6]. In support, Valdivia points to the definition of "elect". "As 'elect' is a verb meaning 'to make a selection of' or 'to choose,'…Congress's word choice demonstrates an obligation for employers to engage in some affirmative action to trigger the exemption." [*Id.*] While Valdivia is correct that employers must choose this exclusion, it does not show employers must give notice of this choice. Therefore, without ambiguity, the Court must side with the plain language of the text. Stonecreek was not required to give notice of the healthcare provider exclusion. Therefore, Stonecreek has properly elected the exclusion.

Although the statute does not require notice, the Court does not agree with this result. The statute should explicitly require employers to notify their employees of their choice to make this election. Without required notice, employers may make retroactive choices that benefit them and prejudice their employees. Nonetheless, the Court must determine this case based on the statute in its present form. As the statute and regulations currently stand, unfortunately, no notice is required. To find for the Plaintiff, the Court would be required to add or infer a notice requirement not found in the statute.

### 2. Equitable Estoppel

Valdivia next argues that even if no notice of election was required, Stonecreek was "estopped from terminating Ms. Valdivia because she took time off to seek a medical diagnosis based on Defendant's affirmative representations that she had to do so to protect her job." [*Id.* at 7].

Valdivia cites to several cases that recognize the doctrine of equitable estoppel in the context of the FMLA. Due to this version of the EPSLA being enacted in September of this year,

no similar framework exists. The Sixth Circuit "recognizes that in certain circumstances equitable estoppel applies to employer statements regarding an employee's FMLA eligibility, preventing the employer from raising non-eligibility as a defense." *Dobrowski v. Jay Dee Contractors, Inc.*, 571 F.3d 551, 554 (6th Cir. 2009). In order to succeed on a claim of equitable estoppel under the FMLA, a plaintiff must show: "(1) a definite misrepresentation as to a material fact, (2) a reasonable reliance on the misrepresentation, and (3) a resulting detriment to the party reasonably relying on the misrepresentation." *Id.* at 557.

The purpose of equitable estoppel under the FMLA is to prevent employers from making reasonable but mistaken statements to employees and having employees rely on that mistaken statement to their detriment. There is no reason a similar result would not be desired under the EPSLA. Therefore, the Court will consider the equitable estoppel factors under the FMLA.

Even when viewing the facts in the Complaint as true, Valdivia has not shown a definite misrepresentation as to a material fact. Valdivia alleges the "Assistant Director of Nursing told Ms. Valdivia to go home since her temperature was rising." Valdivia does not allege she was told she would be paid for that day or that she was covered under any act. In *Dobrowski,* Dobrowki was specifically told "the company was providing him with FMLA leave." *Id.* at 553; *see also Minard v. ITS Deltacom Communications, Inc.,* 447 F.3d 352 (5th Cir. 2006) (equitable estoppel applied because employer informed employee she was an "eligible employee" and entitled to time off). Here, there is no indication Stonecreek informed Valdivia that she would be paid, or she was covered under the EPSLA. Without evidence of a misrepresentation regarding Valdivia's coverage under the EPSLA, the Court cannot find Stonecreek is estopped.

**B. Wrongful Termination**

7

Valdivia alleges she was terminated in violation of 902 KAR 20:048 § 3(10)(d) and KRS §§ 216B.042(1) and 216(B).105(1). Stonecreek argues a regulation cannot support a claim of wrongful termination and Valdivia's termination did not violate either cited statute.

Ordinarily, Kentucky allows "an employer [to] discharge his at-will employee for good cause, for no cause, or for a cause that some might view as morally indefensible." *Firestone Textile Co. Div., Firestone Tire & Rubber Co. v. Meadows*, 666 S.W.2d 730, 731 (Ky. 1983) (citing *Prod. Oil Co. v. Johnson*, 313 S.W.2d 411 (Ky. 1958); *Scroghan v. Kraftco Corp.*, 551 S.W.2d 811 (Ky. Ct. App. 1977)). But to that general rule, Kentucky recognizes a limited exception for terminations against public policy. *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985); *accord Hall v. Consol of Ky. Inc.*, 162 Fed.Appx. 587, 589–90 (6th Cir. 2006).

The exception is narrow: The employee's discharge must be "contrary to a fundamental and well-defined public policy as ... evidenced by a constitutional or statutory provision." *Grzyb*, 700 S.W.2d at 401. Absent an express legislative prohibition, there are "only two situations ... where 'grounds for discharging an employee are so contrary to public policy as to be actionable.'" *Id.* at 402 (quoting *Suchodolski v. Mich. Consol. Gas Co.*, 316 N.W.2d 710, 711 (Mich. 1982)). Those situations are (1) "where the alleged reason for the discharge of the employee was the [employee's] failure or refusal to violate a law in the course of employment," and (2) "when the reason for a discharge was the employee's exercise of a right conferred by well-established legislative enactment." *Id.* (quoting *Suchodolski*, 316 N.W.2d at 711–12). The question of whether there is an actionable public-policy foundation is a matter of law for the Court to determine. *Id.* at 401. "Kentucky courts applying *Grzyb* have limited their analysis to whether the discharge was for one of these two enumerated reasons." *Hall*, 162 Fed.Appx. at 589 (citing *Nork v. Fetter*

8

*Printing Co.*, 738 S.W.2d 824, 827 (Ky. Ct. App. 1987); *Moss v. Robertson*, 712 S.W.2d 351, 353 (Ky. Ct. App. 1986)).

Valdivia cites several cases that she argues expand Kentucky law and allow regulations to satisfy the "well-defined public policy" requirement. However, the cases Valdivia cites have not been applied in the wrongful termination context. In *Centre College V. Trzop,* the Court stated, "administrative regulations do have the force and effect of law when they have been duly promulgated and are consistent with the enabling legislation." 127 S.W.3d 562, 566 (Ky. 2003). However, the Court was considering claims of contractual due process, state statutory due process, constitutional due process and defamation. *Id.* at 565. The Court in *Flying J Travel Plaza v. Com., Transp. Cabinet, Dep't of Highways*, also stated, "regulations of any kind which have been duly adopted and properly filed have the full effect of law." 928 S.W.2d 344, 347 (Ky. 1996). However, that case was regarding free speech and commercial speech. *Id.* at 345. Valdivia does not point to any caselaw applying regulations in the wrongful termination context. Kentucky courts still limit the at-will employment exception to constitutional and statutory provisions. *See Hill v. Kentucky Lottery Corp.* 327 S.W.3d 412, 420-422 (Ky. 2010); *Foster v. Jennie Stuart Medical Center, Inc.,* 435 S.W.3d 629, 635 (Ky. Ct. App. 2013); *Mitchell v. Coldstream Laboratories, Inc.,* 337 S.W.3d 642, 645 (Ky. Ct. App. 2010). Therefore, the regulation Valdivia cites cannot support her claim of wrongful termination.

KRS 216B.042(1) states:

(1) The cabinet shall:

   (a) Establish by promulgation of administrative regulation under KRS Chapter 13A reasonable application fees for licenses and promulgate other administrative regulations necessary for the proper administration of the licensure function;

> (b) Issue, deny revoke, modify, or suspend licenses or provisional licenses in accordance with the provisions of this chapter;
>
> (c) Establish licensure standards and procedures to ensure safe, adequate, and efficient abortion facilities, health facilities and health services. These regulations, under KRS Chapter 13A, shall include, but need not be limited to:
>
>> 1. Patient care standards and safety standards, minimum operating standards, minimum standards for training, required licenses for medical staff personnel, and minimum standards for maintaining patient records;
>>
>> 2. Licensure application and renewal procedures; and
>>
>> 3. Classification of health facilities and health services according to type, size, range of services, and level of care; and
>
> (d) Compile in a single document, maintain, and make available to abortion facilities and the public during regular business hours, all licensure standards and procedures promulgated under KRS Chapter 13A related to abortion facilities.

KRS §216B. 105(1) provides:

> (1) Unless otherwise provided in this chapter, no person shall operate any health facility in this Commonwealth without first obtaining a license issued by the cabinet, which license shall specify the kind or kinds of health services the facility is authorized to provide. A license shall not be transferable and shall be issued for a specific location and, if specified, a designated geographical area.

Valdivia does not argue how her termination violated these specific statutory provisions. In *Ulrich v. Catholic Health Initiatives Physician Services,* Ulrich was employed by Catholic Health Initiatives Physician Services. 2019 WL 2068722 *1 (Ky. Ct. App. May 10, 2019). Ulrich cited to KRS § 216B.042, among others, "to support her contention that her termination violated public policy." *Id.* at 2. The Court held:

> These rules allow the Cabinet for Health and Family Services to make rules for the certification of medical facilities and inspect said facilities. When examining the public policy issue and the attendant relevant statutes, the statutes must have an "employment-related nexus." *Grzyb v. Evans,* 700 S.W.2d 399, 402 (Ky. 1985). In other words, "important to a finding of wrongful discharge is the requirement that

10

> the public policy must be defined by statute and directed at providing statutory protection to the worker in his employment situation." *Shrout v. The TFE Grp.,* 161 S.W.3d 351, 354 (Ky. App. 2005) (footnote omitted). Here, the statutes and regulation cited by [Ulrich] do not relate to [Ulrich] or protecting her interests as an employee, the relate to [Catholic Initiatives Physician Services] and its healthcare license.

*Id.* The same is true in the present case. Valdivia has not provided a statutory or constitutional provision that would be violated by Valdivia's termination. Therefore, this claim must also be dismissed.

Valdivia also argues Governor Beshear's COVID-19 Executive Orders are evidence of a well-defined public policy. However, there is no caselaw to support Valdivia's argument that Executive Orders may be used as well-defined public policy in the wrongful termination context. Valdivia cites to an Eastern District of Kentucky case where the Court considered Governor Beshear's Executive Order where a church sought a temporary restraining order. *Tabernacle Baptist Church v. Beshear,* 2020 U.S. Dist. LEXIS 81534 (E.D. Ky. May 8, 2020). In a footnote, the Court considered Tabernacle's standing to challenge the Executive Order pre-enforcement. In relevant part, the Court stated:

> The executive order has yet to be enforced against Plaintiff Tabernacle. However, the Court notes that there is no issue at this preliminary stage concerning Tabernacle's ability to establish standing in this apparent pre-enforcement challenge. *McKay v. Federspiel,* 823 F.3d 862, 867 (6th Cir. 2016); *see also Michigan Gas Co. v. F.E.R.C.,* 115 f.3D 1266, 1269 (6th Cir. 1997) ("Standing 'is a qualifying hurdle that plaintiffs must satisfy even if raised sua sponte by the court.'"). To bring such a challenge, a plaintiff must sufficiently allege (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest," (2) that is "proscribed by a [law]," and (3) "there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 159 (2014) (citation omitted). It is beyond dispute that the first two elements are easily met.

*Id.* at *6 n.3. This finding by the Court does not change Kentucky's law requiring a well-defined public policy be evidenced by either statutory or constitutional provisions in the wrongful

termination context. Therefore, Governor Beshear's Executive Orders cannot support Valdivia's claim.

The Court also agrees with Stonecreek's argument that even if the Executive Orders could be considered, they would not offer Valdivia relief. The "public policy must be defined by statute and directed at providing statutory protection to the worker in his employment situation." *Shrout v. TFE Group,* 161 S.W.3d 351, 354 (Ky. Ct. App. 2005). The primary purpose of Governor Beshear's Executive Orders was to "help protect our community from the spread of COVID-19". [DN 6-2 at PageID 48]. There is no indication that the primary purpose of the Executive Orders was to protect workers in the course of their employment. *See id.* at 355. Therefore, the Orders do not provide Valdivia relief.

## IV. Conclusion

For the above stated reasons, **IT IS HEREBY ORDERED** that Stonecreek's Motion to Dismiss [DN 5] is **GRANTED**. A judgment will follow.

**IT IS SO ORDERED**.

**Thomas B. Russell, Senior Judge**
**United States District Court**

December 14, 2020

cc: counsel